No. 23-35496

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

SHAWNNA MONTES, on behalf of herself
and all others similarly situated,

*Plaintiff-Appellant*,

v.

SPARC GROUP LLC,

*Defendant-Appellee*.

---

On Appeal from the United States District Court
for the Eastern District of Washington
No. 2:22-cv-00201-TOR
Hon. Thomas O. Rice

---

## PLAINTIFF-APPELLANT'S
## OPENING BRIEF

---

HATTIS & LUKACS
Daniel M. Hattis
Paul Karl Lukacs
Che Corrington
11711 SE 8th St., Suite 120
Bellevue, WA 98005
Telephone: (425) 233-8628
*Attorneys for Plaintiff-Appellant*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................1

JURISDICTIONAL STATEMENT ....................................................4

STATEMENT OF ISSUES PRESENTED FOR REVIEW ..................5

STATUTORY AUTHORITIES ...........................................................5

STATEMENT OF THE CASE ............................................................5

SUMMARY OF THE ARGUMENT ..................................................11

STANDARD OF REVIEW ...............................................................17

ARGUMENT .....................................................................................19

    I.     MS. MONTES'S COMPLAINT ALLEGES AN INJURY UNDER THE WASHINGTON CONSUMER PROTECTION ACT..............19

          A.    The CPA Must Be Construed Broadly To Protect Consumers................................................................. 21

          B.    Ms. Montes's Purchase Price Theory Is A Form Of Injury Under The CPA........................................... 24

                  1.    The Purchase Price Theory Is Already Recognized Under Washington Law..................................................25

                  2.    The Oregon Supreme Court Recently Corrected The Same Mistake That The District Court Made Here........28

                  3.    This Court Has Previously Corrected The Same Mistake That The District Court Made Here..................31

                  4.    The Washington Supreme Court Would Affirm *Williams* And Follow The Oregon Supreme Court In Recognizing The Purchase Price Theory. ......................33

i

  C. Ms. Montes's Benefit Of The Bargain Theory Is A Form Of Injury Under The CPA........................................................ 38

    1. The Lost Benefit Of The Bargain Is Already Recognized As A CPA Injury Under Washington Law. ..............................................................38

    2. Ms. Montes Has Sufficiently Alleged The Benefit Of The Bargain Theory...................................................41

  D. Ms. Montes's Price Premium Theory Is A Form Of Injury Under The CPA........................................................... 43

    1. The Price Premium Theory Is Well-Established In Both The Economics And Legal Community. ...............44

    2. Ms. Montes Has Sufficiently Alleged The Price Premium Theory. ...........................................................47

II. THE DISTRICT COURT ERRED BY DISMISSING THE COMPLAINT WITH PREJUDICE AND FAILING TO GRANT MS. MONTES LEAVE TO FILE A FIRST AMENDED COMPLAINT......................................................................50

III. IF THE COURT DEEMS IT APPROPRIATE, IT SHOULD CERTIFY THE QUESTION TO THE WASHINGTON SUPREME COURT. ..........................................................................53

CONCLUSION .......................................................................54

# TABLE OF AUTHORITIES

**Cases**                                                                                                              **Pages**

*Brazil v. Dell Inc.,*
  No. C-07-01700RMW,
  2010 WL 5387831 (N.D. Cal. Dec. 21, 2010)............................................16, 47

*Briseno v. ConAgra Foods, Inc.,*
  674 Fed. App'x 654 (9th Cir. 2017) .......................................................2, 15, 45

*Broomfield v. Craft Brew All., Inc.,*
  No. 17-CV-01027-BLF,
  2018 WL 4952519 (N.D Cal. Sept. 25, 2018)..................................................46

*Center for Biological Diversity v. Veneman,*
  394 F.3d 1108 (9th Cir. 2005) ............................................................................51

*Clark v. Eddie Bauer LLC,*
  30 F.4th 1151 (9th Cir. 2022) ...............................................................17, 53, 54

*Clark v. Eddie Bauer LLC,*
  371 Or. 177, 530 P.3d 880 (2023) ..............................................................passim

*Dix v. ICT Group, Inc.,*
  160 Wash. 2d 826, 161 P.3d 1016 (2007) ...........................................21, 34, 35

*Eminence Capital, L.L.C. v. Aspeon, Inc.,*
  316 F.3d 1048 (9th Cir. 2003) ....................................................................18, 52

*Fitzhenry-Russell v. Dr. Pepper Snapple Group, Inc.,*
  326 F.R.D. 592 (N.D. Cal. 2018).......................................................................46

*Foman v. Davis,*
  371 U.S. 178 (1962)............................................................................................52

*Frias v. Asset Foreclosure Services, Inc.,*
  181 Wash. 2d 412, 334 P.3d 529 (2014) ....................................................passim

*Friedl v. City of New York,*
  210 F.3d 79 (2d Cir. 2000) ..................................................................50

*Grigsby v. Valve Corporation,*
  No. C12-0553 JLR,
  2013 WL 12310666 (W.D. Wash. Mar. 18, 2013)...........................................26

*Handlin v. On-Site Manager Inc.,*
  187 Wash. App. 841, 351 P.3d 226 (2015) .......................................................22

*Hangman Ridge Training Stables, Inc. v. Safeco Title Insurance Company,*
  105 Wash. 2d 778, 719 P.2d 531 (1986) ...........................................................21

*Hansen v. Newegg.com, Americas, Inc.,*
  25 Cal. App. 5th 714, 236 Cal. Rptr. 3d 61 (2018) ..........................................33

*Hilsley v. Ocean Spray Cranberries, Inc.,*
  No. 17CV2335-GPC(MDD),
  2019 WL 3006465 (S.D. Cal. July 10, 2019) ....................................................45

*Hinojos v. Kohl's Corp.,*
  718 F.3d 1098 (9th Cir. 2013) ...............................................................passim

*In re ConAgra Foods, Inc.,*
  90 F. Supp. 3d 919 (C.D. Cal. 2015) ...............................................................45

*In re Scotts EZ Seed Litig.,*
  304 F.R.D. 397 (S.D.N.Y. 2015) ......................................................................46

*Indoor Billboard/Washington, Inc. v. Integra Telecom of Washington, Inc.,*
  162 Wash. 2d 59, 170 P.3d 10 (2007) ....................................................12, 22, 35

*Kwikset Corp. v. Superior Court (Benson),*
  51 Cal. 4th 310, 246 P.3d 877 (2011)...............................................................37

*Lopez v. Smith,*
  203 F.3d 1122 (9th Cir. 2000) ...........................................................16, 50, 51

*Manzarek v. St. Paul Fire & Marine Ins. Co.,*
  519 F.3d 1025 (9th Cir. 2008) .........................................................................52

*Mason v. Mortgage America, Inc.,*
  114 Wash. 2d 842, 792 P.2d 142 (1990) ............................................2, 14, 39, 42

*McCrary v. Elations Co. LLC,*
  EDCV 13-0242 JGB (SPx),
  2014 WL 12589137 (C.D. Cal. Dec. 2, 2014)...................................................46

*McGill v. Citibank, N.A.,*
  2 Cal. 5th 945, 393 P.3d 85 (2017).....................................................................37

*McInnis & Co. v. W. Tractor & Equip. Co.,*
  63 Wash. 2d 652, 388 P.2d 562 (1964) ..............................................................38

*Nat'l Council of La Raza v. Cegavske,*
  800 F.3d 1032 (9th Cir. 2015) ............................................................................50

*Nemykina v. Old Navy, LLC,*
  461 F. Supp. 3d 1054 (W.D. Wash. 2020) ....................................................1, 26

*Panag v. Farmers Ins. Co. of Washington,*
  166 Wash. 2d 27, 204 P.3d 885 (2009) ......................................................passim

*Prescott v. Reckitt Benckiser LLC,*
  No. 20-CV-02101-BLF,
  2022 WL 3018145 (N.D. Cal. July 29, 2022) ....................................................45

*Robinson v. Avis Rent A Car Sys., Inc.,*
  106 Wash. App. 104, 22 P.3d 818 (2001) ..........................................................24

*Ruiz Torres v. Mercer Canyons Inc.,*
  835 F.3d 1125 (9th Cir. 2016) ..............................................................13, 20, 23

*Rydman v. Champion Petfoods USA, Inc.,*
  No. C18-1578 TSZ,
  2023 WL 3172466 (W.D. Wash. May 1, 2023) ......................................2, 16, 44

*Ryman v. Sears, Roebuck & Co.,*
  505 F.3d 993 (9th Cir. 2007) .............................................................14, 18, 27, 33

*Salter v. Heiser,*
39 Wash. 2d 826, 239 P.2d 327 (1951) ................................................14, 38, 39

*Sanders v. Kennedy,*
794 F.2d 478 (9th Cir. 1986) ............................................................17

*Schneider v. Chipotle Mexican Grill, Inc.,*
328 F.R.D 520 (N.D. Cal. 2018)........................................................46

*Scott v. Cingular Wireless,*
160 Wash. 2d 843, 161 P.3d 1000 (2007) ..............................12, 21, 34

*Selman v. Shirley,*
161 Or. 582, 85 P.2d 384 (1938) ........................................15, 39, 40

*Smith v. Pacific Properties and Development Corp.,*
358 F.3d 1097 (9th Cir. 2004) ...........................................................18

*Thornell v. Seattle Serv. Bureau, Inc.,*
184 Wash. 2d 793, 363 P.3d 587 (2015) ...........................3, 12, 22, 35

*Turner v. Enders,*
15 Wash. App. 875, 552 P.2d 694 (1976) ....................................15, 38

*U.S. v. Corinthian Colleges,*
655 F.3d 984 (9th Cir. 2011) ..........................................................5, 19

*United States v. Ritchie,*
342 F.3d 903 (9th Cir. 2003) ............................................................50

*Water & Sanitation Health, Inc. v. Chiquita Brands Int'l, Inc.,*
No. C14-10 RAJ,
2014 WL 2154381 (W.D. Wash. May 22, 2014) ...............................26

*Williams v. Lifestyle Lift Holdings, Inc.,*
175 Wash. App. 62, 302 P.3d 523 (2013) .....................................passim

## Statutes

Wash. Rev. Code § 19.86.020....................................................................19

Wash. Rev. Code § 19.86.090................................................................ 12, 19

**INTRODUCTION**

The central issue in this appeal is whether the "injury" element of a claim brought under Washington's Consumer Protection Act (CPA) can be established in a false discount advertising case. In her Complaint, Plaintiff-Appellant Shawnna Montes alleges that she suffered three cognizable injuries under the CPA as a result of Defendant-Appellee SPARC Group LLC's ("Aéropostale") false discount advertising. The CPA's injury element is interpreted broadly, with only personal injuries having been excluded. *Frias v. Asset Foreclosure Services, Inc.*, 181 Wash. 2d 412, 334 P.3d 529, 538 (2014). None of Ms. Montes's alleged injuries are personal injuries, and thus, they each easily satisfy the CPA's injury element.

First, Ms. Montes suffered an injury in the loss of the money that she spent purchasing a product that she would not have purchased but for Aéropostale's false discount advertising (***the "purchase price" theory***). This form of injury under the CPA is recognized by Washington law. *See Williams v. Lifestyle Lift Holdings, Inc.*, 175 Wash. App. 62, 302 P.3d 523 (2013); *see also Nemykina v. Old Navy, LLC*, 461 F. Supp. 3d 1054 (W.D. Wash. 2020) (Washington federal court finding that a consumer may suffer injury under the CPA by spending money the consumer otherwise would not have spent as a result of the false discount advertising).

Second, Ms. Montes suffered an injury in the loss of the value of the bargain that was advertised to her by Aéropostale but that she did not actually receive (***the "benefit of the bargain" theory***). This form of injury under the CPA is recognized by Washington law. *See Mason v. Mortgage America, Inc.*, 114 Wash. 2d 842, 792 P.2d 142 (1990).

Third, Ms. Montes alleges that Aéropostale's false discount advertising artificially inflated demand and in turn increased the prices Aéropostale was able to command for its products (***the "price premium" theory***). Federal courts within the Ninth Circuit have consistently held that this is a form of injury in false advertising cases, including under the CPA. *See*, *e.g.*, *Rydman v. Champion Petfoods USA, Inc.*, No. C18-1578 TSZ, 2023 WL 3172466 (W.D. Wash. May 1, 2023); *Briseno v. ConAgra Foods, Inc.*, 674 Fed. App'x 654 (9th Cir. 2017).

The U.S. District Court for the Eastern District of Washington erred in dismissing Ms. Montes's Complaint for failure to sufficiently allege an injury under the CPA. The District Court compounded the error by declining to grant Ms. Montes even one opportunity to amend her operative and only Complaint.

The District Court misunderstood the law. The District Court erroneously concluded that false advertising only causes injury under the CPA where the item was different or worth less than the falsely advertised "discounted" price. In

reaching this conclusion, the District Court disregarded all three of the recognized injuries that Ms. Montes suffered.

The District Court's construction of the CPA also immunizes retailers from liability for all false advertising that falls outside of the District Court's myopic definition of injury. But the CPA's concept of injury is nowhere near that narrow. On the contrary, the CPA must be construed in a manner that protects consumers from clever liars, which the District Court failed to do. *See Thornell v. Seattle Serv. Bureau, Inc.*, 184 Wash. 2d 793, 363 P.3d 587, 591 (2015) (interpreting CPA in favor of plaintiffs because of fear that "unscrupulous entities might escape liability under the CPA" otherwise).

There is a sense of *déjà vu* about the District Court's error. Two federal district courts previously made the identical error of law regarding the injury element of the consumer protection statutes of California and Oregon; both times, appellate courts clarified that a plaintiff who made a purchase due to the advertising of false discounts had been injured under the respective state's laws. *Hinojos v. Kohl's Corp.*, 718 F.3d 1098 (9th Cir. 2013); *Clark v. Eddie Bauer LLC*, 371 Or. 177, 530 P.3d 880 (2023). The District Court has repeated this error, requiring this Court to intervene.

Consequently, Ms. Montes respectfully requests that this Court reverse the

Order and Judgment entered by the District Court and remand this civil action with instructions to either order Aéropostale to file an Answer (if this Court rules that Ms. Montes's Complaint sufficiently pleads her claim) or with instructions to grant Ms. Montes leave to amend (if this Court rules that Ms. Montes's Complaint insufficiently pleads her claim). In the alternative, Ms. Montes respectfully requests that the Court grant her Motion for Order Certifying Questions of Law to the Washington Supreme Court. *See* Dkt. No. 4.

## JURISDICTIONAL STATEMENT

The U.S. District Court for the Eastern District of Washington exercised jurisdiction over this dispute pursuant to the Class Action Fairness Act (28 U.S.C. § 1332(d)(2)). Compl. ¶¶ 15–16 (ER-19–20). The U.S. Court of Appeals for the Ninth Circuit possesses jurisdiction over this appeal from a final decision of a district court pursuant to 28 U.S.C. § 1291.

On June 22, 2023, the District Court entered the Order and the separate Judgment being appealed from—an Order and Judgment which each disposed of all parties' claims. *See* Order Granting Motion to Dismiss ("Order") (ER-4–11); Judgment (ER-3). Ms. Montes filed her Notice of Appeal on July 20, 2023—an appeal which was timely under the 30-day filing deadline of Fed. R. App. P. 4(a)(1)(A). Notice of Appeal (ER-53).

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

**Issue One**: Did Plaintiff-Appellant Shawnna Montes sufficiently allege in her Complaint that she had been "injured in his or her business or property" under Washington's Consumer Protection Act, Wash. Rev. Code § 19.86.090?

**Issue Two**: Did the District Court err by dismissing Plaintiff's Complaint with prejudice and without allowing her leave to amend even once?

## STATUTORY AUTHORITIES

The most relevant statutory authorities appear in the Addendum to this brief.

## STATEMENT OF THE CASE

The following allegations appear in Plaintiff Shawnna Montes's operative and only Complaint (ER-15–52), which she brings in her individual capacity and as a proposed representative of a class of consumers similarly situated. For purposes of this appeal, the following allegations are presumed to be true and are construed in the light most favorable to Ms. Montes (*U.S. v. Corinthian Colleges*, 655 F.3d 984, 991 (9th Cir. 2011)):

**Ms. Montes Alleges That Aéropostale Engaged In A Massive False Discount Advertising Scheme.** For years, Aéropostale perpetrated a massive false discount advertising scheme across nearly all of its Aéropostale-branded products and sales channels (i.e., on the Aéropostale website and in its brick-and-mortar

stores). Compl. ¶ 3 (ER-16). (Ms. Montes's personal and class claims are confined to purchases made on the Aéropostale website even though the scheme spanned across all of Aéropostale's sales channels. Compl. ¶ 1 (ER-16).)

Aéropostale is a popular clothing retailer that primarily targets the teen and young adult market. Compl. ¶ 2 (ER-16). Almost all of the items offered for sale by Aéropostale on its website and in its retail stores are branded as "Aéropostale" products and are offered **exclusively** by Aéropostale. *Id.*

For years, Aéropostale advertised website-wide and store-wide perpetual discounts—typically 50% to 70% off—from Aéropostale's self-created list prices for its products. Compl. ¶ 3 (ER-16). For items purportedly on sale, Aéropostale represented its list prices to be the regular and normal selling prices of the items, and the list prices functioned as reference prices from which the advertised discounts and percentage-off sales were calculated. Compl. ¶ 4 (ER-16).[1]

There can be no doubt that Aéropostale intended that consumers interpret and understand Aéropostale's list prices to stand for Aéropostale's regular selling

---

[1]     In the academic literature studying consumer behavior, the term of art "reference price" means the price to which the retailer is comparing the current purportedly discounted price. *See* Compl. ¶ 26 & n.3 (ER-22). For example, if a price tag states "$100 $70," the reference price is $100. If an in-store sign states "Everything 50% Off," then an item being offered for sale at $20 has an implicit reference price of $40. Colloquially, a reference price is sometimes referred to as a "normal price," "regular price" or "list price."

prices for those products. In fact, for years on its product webpages on the Aéropostale website, Aéropostale featured a prominent red box next to the product's "sale" price and list price which stated: "**SAVE XX% OFF THE REGULAR PRICE.**" Compl. ¶¶ 44–45 (ER-28).

However, Aéropostale's discounts and reference prices were false because Aéropostale never or rarely offered its products at the advertised list price. Compl. ¶ 6 (ER-17). Aéropostale perpetrated this illegal scheme to create the illusion of savings and to induce customers to purchase its products. *Id.* Aéropostale's marketing plan was to trick customers into believing that the list price was the regular selling price for its products, and that its products were worth this inflated list price, such that the lower advertised "sale" price represented a special bargain. Compl. ¶ 7 (ER-17).

**Ms. Montes Alleges She Bought A Pair Of Leggings From Aéropostale's Website That Was Falsely Advertised As Being On Sale At A Discount.**

On January 9, 2021, Ms. Montes visited the Aéropostale website to shop for clothes. Compl. ¶ 85 (ER-42). While browsing the website, Ms. Montes viewed webpages advertising Seriously Soft Heathered High-Rise Leggings ("Leggings"). *Id.* On the product webpage for the Leggings, Ms. Montes viewed a strike-through list price of "$12.50" and a "sale" price of $6.00. Compl. ¶¶ 86–87 (ER-43).

7

Relying on Aéropostale's representations, Ms. Montes reasonably believed that the Leggings were regularly offered for sale by Aéropostale for the $12.50 list price. Compl. ¶ 88 (ER-43). Ms. Montes reasonably believed that the Leggings were thereby worth and had a value of $12.50. *Id.* Consequently, Ms. Montes believed that the advertised "sale" price of $6.00—a purported monetary discount of $6.50—represented a special bargain. *Id.* Relying on Aéropostale's representations, Ms. Montes purchased the Leggings. Compl. ¶ 89 (ER-43).

However, the advertised regular price and discount for the Leggings were false and deceptive. Compl. ¶ 90 (ER-44). Unbeknownst to Ms. Montes, Aéropostale had virtually never offered the Leggings at its advertised regular price of $12.50. *Id.* As part of its investigation, Ms. Montes's counsel tracked the online daily prices of the Leggings. Compl. ¶ 91 (ER-44). For the six months prior to Ms. Montes's purchase on January 9, 2021, Aéropostale offered the Leggings on its website at the purported regular price of $12.50 for only a single day. *Id.* For all other days, Aéropostale's offering price ranged from $5.00 (i.e., 17% *less* than what Ms. Montes paid) to $6.00 (the same price that Ms. Montes paid). *Id.* And, based on the investigation of Ms. Montes's counsel, Aéropostale offered and advertised its products with identical list prices and at substantially the same sale prices both on the Aéropostale website and in its retail stores. Compl. ¶ 92 (ER-

44). In fact, Ms. Montes placed the order for the Leggings online to be picked up in-store, and she then drove to her local Aéropostale store at the Spokane Valley Mall to pick the Leggings up. Compl. ¶ 93 (ER-44).

The Leggings purchased by Ms. Montes were not in fact worth the advertised $12.50 supposed "regular" price that Aéropostale had led her to believe. Compl. ¶ 94 (ER-45). Contrary to Aéropostale's representations, Ms. Montes did not receive the advertised and promised savings for the Leggings. *Id.*

If Ms. Montes had known the truth, she would not have purchased the Leggings at the price she paid. Compl. ¶ 97 (ER-45). Additionally, Ms. Montes— along with every other consumer—paid a higher price or "price premium" for Aéropostale's products because Aéropostale's false advertising artificially inflated consumer demand, which enabled Aéropostale to charge *all* consumers a higher price for its products than it otherwise could have. Compl. ¶ 114 (ER-49).

**Procedural History.** On September 15, 2022, Ms. Montes filed her class action complaint in the U.S. District Court for the Eastern District of Washington. Compl., p. 1 (ER-15). The original Complaint remained the operative complaint for the remainder of the trial court proceedings. *See* Docket (ER-56–60).

On behalf of herself individually and on behalf of a class of Washington consumers who made purchases from the Aéropostale website, Ms. Montes's

Complaint alleges a single cause of action for violation of the Washington Consumer Protection Act (CPA). Compl. ¶¶ 106–117 (ER-48–50). Ms. Montes's Complaint alleges that Aéropostale violated the CPA by engaging in a massive false discount advertising scheme, as described above.

On March 10, 2023, Defendant SPARC Group LLC ("Aéropostale") filed its Motion to Dismiss Plaintiff's Complaint (the "Motion to Dismiss"). *See* Docket (Dkt. 7) (ER-58). Aéropostale's principal argument was that the Complaint fails to allege an injury under the CPA. *See* Order 5–7 (ER-8–10). "Defendant conceded the deceptive acts and causation elements were met for purposes of the present motion, and that injury is the sole issue before the court." Order 6 (ER-9). Ms. Montes filed an Opposition (Dkt. 11), and Aéropostale filed a Reply (Dkt. 18). Oral argument was held on June 15, 2023. *See* Docket (Dkt. 23) (ER-59).

On June 22, 2023, the District Court granted the Motion To Dismiss. Order (ER-4). The District Court held that Ms. Montes failed to state a plausible claim for relief because she failed to allege a cognizable injury under the CPA. Order 4–7 (ER-7–10). The District Court's rationale for its holding was that "Washington cases that find injury in false advertising are for goods and services that were different and/or worth less than what was advertised," and that Ms. Montes did not

allege that the Leggings were not worth the falsely advertised "discounted" price she paid. Order 5–6 (ER-8–9).

The District Court granted the Motion To Dismiss with prejudice and without leave to amend, finding that "Plaintiff cannot prevail on her dismissed claim and it would be futile to give her an opportunity to amend." Order 8:1-3 (ER-11). On the same day, the District Court entered a Judgment which reads, "Plaintiff's Complaint is DISMISSED with prejudice." Judgment (ER-3).

On July 20, 2023, Ms. Montes timely filed her Notice of Appeal (ER-53).

## SUMMARY OF THE ARGUMENT

The central issue in this appeal is whether the "injury" element of a claim brought under Washington's Consumer Protection Act (CPA) can be established in a false discount advertising case. No other element of the CPA is in dispute. "Defendant conceded the deceptive acts and causation elements were met for purposes of the present motion, and that injury is the sole issue before the court." Order 6 (ER-9).

The CPA states, "Any person who is injured in his or her business or property by a violation of [the Act] . . . may bring a civil action in superior court to enjoin further violations, to recover the actual damages sustained by him or her, or both, together with the costs of the suit, including a reasonable attorney's fee."

Wash. Rev. Code § 19.86.090.

The Washington Supreme Court interprets the CPA as broadly as necessary to effectuate "the CPA's twin purposes of protecting the public and fostering fair and honest competition." *Thornell v. Seattle Serv. Bureau, Inc.*, 184 Wash. 2d 793, 363 P.3d 587, 591–92 (2015) (detailing a half-dozen cases where the CPA was interpreted broadly to serve its purposes). This is equally true for the CPA's private right of action, which is considered "an integral part of CPA enforcement." *Scott v. Cingular Wireless*, 160 Wash. 2d 843, 161 P.3d 1000, 1006 (2007).

The Washington Supreme Court considers the private right of action so vitally important that it "construe[s] the CPA liberally in favor of plaintiffs." *Indoor Billboard/Washington, Inc. v. Integra Telecom of Washington, Inc.*, 162 Wash. 2d 59, 170 P.3d 10, 24 (2007). This has led the court to repeatedly reject interpretations of the CPA that would thwart the ability of consumers to bring a claim against a deceptive practice. *See*, *e.g.*, *Thornell*, 363 P.3d at 591 (interpreting the CPA in favor of plaintiffs because it feared that "unscrupulous entities might escape liability under the CPA" otherwise).

This liberal interpretation in favor of plaintiffs applies to every aspect of a CPA claim, including the injury element. Only personal or emotional injuries have been excluded from the expansive meaning of "injured in his or her business or property." *See Frias v. Asset Foreclosure Services, Inc.*, 181 Wash. 2d 412, 334 P.3d 529, 538 (2014); *Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1135 (9th Cir. 2016) ("[T]he limitation that a defendant's conduct cause injury to 'business or property' has only been deployed to exclude suits for personal injury and emotional distress."). Ms. Montes's alleged injuries are not personal injuries and thus fit comfortably within the meaning of injury to "business or property."

Accordingly, Ms. Montes has suffered the following three injuries under the CPA as a result of Aéropostale's false advertising, with each of these injuries having been recognized by Washington or federal courts:

*First*, Ms. Montes suffered an injury in the loss of the money that she spent purchasing a product that she would not have purchased but for Aéropostale's false discount advertising (*the "purchase price" theory*). This injury is recognized under Washington law. *Williams v. Lifestyle Lift Holdings, Inc.*, 175 Wash. App. 62, 302 P.3d 523 (2013). The District Court was obligated to follow *Williams* because the District Court did not cite "convincing evidence" (or *any* evidence) that the Washington Supreme Court would decide the issue differently. *See Ryman*

*v. Sears, Roebuck & Co.*, 505 F.3d 993, 995 (9th Cir. 2007). On the contrary, all evidence indicates that the Washington Supreme Court would affirm *Williams* and recognize the purchase price theory of injury. Beyond the consistent liberal interpretation of the CPA in favor of plaintiffs, the Washington Supreme Court would also likely follow the Oregon Supreme Court's recent decision recognizing the purchase price theory of injury in a false discount advertising case under Oregon law. *See Clark v. Eddie Bauer LLC*, 371 Or. 177, 530 P.3d 880 (2023). This is because both supreme courts interpret their respective consumer protection statutes in materially the same way. *See* Section I-B-4, *infra*.

  **Second**, Ms. Montes suffered an injury in the loss of the value of the bargain that was represented to her by Aéropostale but that she did not actually receive (***the "benefit of the bargain" theory***). The measure of the loss under this theory is "the difference between the value had the misrepresentation been true and the actual value." *Salter v. Heiser*, 39 Wash. 2d 826, 239 P.2d 327, 331 (1951). The benefit of the bargain rule has long been recognized under Washington law as a measurement of damages for fraud; more recently, it has also been recognized as a CPA injury when the loss is caused by deceptive practices. *See Mason v. Mortgage America, Inc.*, 114 Wash. 2d 842, 792 P.2d 142, 149 (1990). The benefit of the bargain rule may be used whenever a plaintiff is recovering damages caused by a

misrepresentation. *See Turner v. Enders*, 15 Wash. App. 875, 552 P.2d 694, 697 (1976). In fact, courts most often apply the benefit of the bargain rule when the misrepresentation is about value, i.e., the kind of misrepresentation Aéropostale made to Ms. Montes. *See Selman v. Shirley*, 161 Or. 582, 85 P.2d 384, 393 (1938) (listing "value, quality [and] condition" as the most common misrepresentations in which courts apply the benefit of the bargain rule).

**Third**, Ms. Montes suffered an injury by paying a price premium for Aéropostale's products as a result of Aéropostale's false discount advertising (***the "price premium" theory***). Specifically, she alleges that Aéropostale's false discount advertising artificially inflated consumer demand and in turn increased the prices Aéropostale was able to command and charge *everyone* for its products. Expert and statistical evidence is used to both prove the injury and calculate the amount of the price premium.

While no Washington state court has considered the price premium theory, many federal courts within the Circuit—including district courts in Washington and this Court—have held that this is a viable injury theory in false advertising cases, including under the CPA. *See, e.g.*, *Briseno v. ConAgra Foods, Inc.*, 674 Fed. App'x 654, 657 (9th Cir. 2017) (affirming certification of 11 state classes based on the plaintiffs' use of "two well-established damages models" to "measure

the classwide price premium attributable to their theory of liability"); *Rydman v. Champion Petfoods USA, Inc.*, No. C18-1578 TSZ, 2023 WL 3172466, at *4 (W.D. Wash. May 1, 2023) ("A price premium theory based on a conjoint analysis is an acceptable method for computing damages [for a CPA claim]."). In fact, Ms. Montes's counsel has previously used expert evidence to successfully certify a class under the price premium theory in ***another false discount advertising case***. *See Brazil v. Dell Inc.*, No. C-07-01700RMW, 2010 WL 5387831 (N.D. Cal. Dec. 21, 2010).

The District Court erred in holding that Ms. Montes failed to allege an injury under the CPA. She alleges three injuries—and she needs only to allege one to survive a motion to dismiss. Additionally, the District Court erred when it dismissed Ms. Montes's original and only Complaint with prejudice without granting her even one opportunity to amend. *See Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

Ms. Montes respectfully requests that this Court reverse the Order and Judgment entered by the U.S. District Court for the Eastern District of Washington and remand this civil action with instructions to either order the defendant to file an Answer (if this Court rules that Ms. Montes's Complaint sufficiently pleads her claim) or with instructions to grant Ms. Montes leave to amend (if this Court rules

that Ms. Montes's Complaint insufficiently pleads her claim). Alternatively, Ms. Montes respectfully requests that the Court grant her Motion for Order Certifying Questions of Law to the Washington Supreme Court. *See* Dkt. No. 4.

## STANDARD OF REVIEW

With regard to Ms. Montes's appeal of the District Court's ruling that she failed to sufficiently allege an injury—and therefore failed to allege a claim—under the CPA, the standard of review is *de novo*. "A dismissal for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) is a ruling on a question of law and, as such, is freely reviewable by this court." *Sanders v. Kennedy*, 794 F.2d 478, 481 (9th Cir. 1986). "Such a dismissal cannot be upheld unless it appears to a certainty that the plaintiff would not be entitled to relief under any set of facts that could be proved. All material allegations in the complaint are to be taken as true and construed in the light most favorable to the non-moving party." *Id.*

"A federal court sitting in diversity applies the substantive law of the state." *Clark v. Eddie Bauer LLC*, 30 F.4th 1151, 1154 (9th Cir. 2022). "In determining the law of the state for purposes of diversity, a federal court is bound by the decisions of the highest state court." *Id.* When "there is no relevant precedent from the state's highest court, but there *is* relevant precedent from the state's intermediate appellate court, the federal court must follow the state intermediate

appellate court decision unless the federal court finds convincing evidence that the state's supreme court likely would not follow it." *Ryman v. Sears, Roebuck & Co.*, 505 F.3d 993, 994 (9th Cir. 2007).

With regard to Ms. Montes's appeal of the District Court's dismissal of the Complaint with prejudice and without leave to amend, the standard of review is abuse of discretion but with a *de novo* review of the underlying law. *Smith v. Pacific Properties and Development Corp.*, 358 F.3d 1097, 1100 (9th Cir. 2004). "Whether such a denial [of leave to amend] rests on an inaccurate view of the law and is therefore an abuse of discretion requires us to review the underlying legal determination *de novo*." *Id.* (citation omitted). "Dismissal with prejudice and without leave to amend is not appropriate unless it is clear on *de novo* review that the complaint could not be saved by amendment." *Eminence Capital, L.L.C. v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

## ARGUMENT

**I.    MS. MONTES'S COMPLAINT ALLEGES AN INJURY UNDER THE WASHINGTON CONSUMER PROTECTION ACT.**

"The focus of any Rule 12(b)(6) dismissal—both in the trial court and on appeal—is the complaint." *U.S. v. Corinthian Colleges*, 655 F.3d 984, 991 (9th Cir. 2011). Given the *de novo* nature of review, the salient question before the Court is whether Ms. Montes's Complaint sufficiently alleges her CPA claim, not whether the District Court erred (although it certainly did).

The CPA prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." Wash. Rev. Code § 19.86.020. "Any person who is injured in his or her business or property by a violation of RCW 19.86.020 … may bring a civil action in superior court to enjoin further violations, to recover the actual damages sustained by him or her, or both, together with the cost of the suit, including a reasonable attorney's fee." Wash. Rev. Code § 19.86.090. "To prevail in a private CPA claim, the plaintiff must prove (1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) affecting the public interest, (4) injury to a person's business or property, and (5) causation." *Panag v. Farmers Ins. Co. of Washington*, 166 Wash. 2d 27, 204 P.3d 885, 889 (2009).

Only the injury element is at issue in this appeal, because "Defendant conceded the deceptive acts and causation elements were met for purposes of the present motion, and that injury is the sole issue before the court." Order 6 (ER-9).

The injury element is interpreted very broadly, with only personal injuries having been excluded by the courts. *See Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1135 (9th Cir. 2016) ("[T]he limitation that a defendant's conduct cause injury to 'business or property' has only been deployed to exclude suits for personal injury and emotional distress."). Ms. Montes's alleged injuries are not personal injuries and thus fit comfortably within the meaning of injury to "business or property."

Accordingly, Ms. Montes alleges that she suffered the following three cognizable injuries under the CPA as a result of Aéropostale's false advertising. *First*, Ms. Montes suffered an injury in the loss of the money that she spent purchasing a product that she would not have purchased but for Aéropostale's false discount advertising (*the "purchase price" theory*). *Second*, Ms. Montes suffered an injury in the loss of the value of the bargain that was represented to her by Aéropostale but that she did not actually receive (*the "benefit of the bargain" theory*). *Third*, Ms. Montes suffered an injury by paying a price premium as a result of Aéropostale's false discount advertising (*the "price premium" theory*).

## A. The CPA Must Be Construed Broadly To Protect Consumers.

"The CPA is designed to protect consumers from unfair and deceptive acts and practices in commerce." *Scott v. Cingular Wireless*, 160 Wash. 2d 843, 161 P.3d 1000, 1005 (2007). "The CPA also mandates that it be liberally construed to serve its purposes," and the Washington Supreme Court "will not narrowly construe the act … when to do so would conflict with the language of the act and its stated purposes." *Panag*, 204 P.3d at 891. This liberal construction applies to every aspect of the CPA—especially the private right of action.

In 1971, the legislature added a private right of action to the CPA in response to the "escalating need for additional enforcement capabilities." *Hangman Ridge Training Stables, Inc. v. Safeco Title Insurance Company*, 105 Wash. 2d 778, 719 P.2d 531, 534 (1986). "Private actions by private citizens are now an integral part of CPA enforcement. Private citizens act as private attorneys general in protecting the public's interest against unfair and deceptive acts and practices in trade and commerce." *Scott*, 161 P.3d at 1006; *see also Dix v. ICT Group, Inc.*, 160 Wash. 2d 826, 161 P.3d 1016, 1022 (2007) (explaining that the "individual consumer action to enforce [the CPA] and vindicate the public interest is … a significant aspect of a dual enforcement scheme under the CPA").

The Washington Supreme Court considers the private right of action so vitally important that it "construe[s] the CPA *liberally in favor of plaintiffs*." *Indoor Billboard/Washington, Inc. v. Integra Telecom of Washington, Inc.*, 162 Wash. 2d 59, 170 P.3d 10, 24 (2007) (emphasis added). This has led the court to repeatedly reject interpretations of the CPA that would preclude consumers from bringing a claim against a deceptive practice. *See Thornell v. Seattle Serv. Bureau, Inc.*, 184 Wash. 2d 793, 363 P.3d 587, 591–92 (2015) (detailing a half-dozen cases where the court interpreted the CPA broadly for this reason). In *Thornell*, the court interpreted the CPA in favor of plaintiffs because it feared that "unscrupulous entities might escape liability under the CPA" otherwise. *Id.* at 591. In *Panag*, the majority rejected the dissent's interpretation of the CPA because it would effectively condone the deceptive practices by "impos[ing] an insurmountable obstacle to suit by persons in plaintiffs' positions." 204 P.3d at 893. "The end result would be a great disservice to the goals of the CPA." *Id.*

Liberally construing the CPA in favor of plaintiffs means liberally construing every element of a CPA claim so that consumers can protect themselves against all forms of deceptive practices. Naturally, this includes the injury element. "Under the [CPA], 'injury' is broader than 'damages.'" *Handlin v. On-Site Manager Inc.*, 187 Wash. App. 841, 351 P.3d 226, 230 (2015). The only type of

injuries that have been excluded are personal injuries, including "mental distress, embarrassment, and inconvenience." *Frias v. Asset Foreclosure Services, Inc.*, 181 Wash. 2d 412, 334 P.3d 529, 538 (2014); *see also Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1135 (9th Cir. 2016) ("[T]he limitation that a defendant's conduct cause injury to 'business or property' has only been deployed to exclude suits for personal injury and emotional distress."). "Otherwise, however, the business and property injuries compensable under the CPA are relatively expansive." *Frias*, 334 P.3d at 538. And, because the CPA addresses "injuries" rather than "damages," "quantifiable monetary loss is not required." *Id.* "The injury element can be met even where the injury alleged is both minimal and temporary." *Id.*

With this as the Court's backdrop, it is clear that Ms. Montes alleges an injury under the CPA. The statute requires only a peppercorn of loss; common sense and ordinary consumer knowledge dictate that Ms. Montes's allegations easily satisfy this modest requirement. Beyond this, Washington law also recognizes that her allegations constitute an injury under the CPA.

**B.     Ms. Montes's Purchase Price Theory Is A Form Of Injury Under The CPA.**

Ms. Montes's first injury theory is the purchase price theory—the loss of the money that she spent purchasing a product that she would not have otherwise purchased but for Aéropostale's misrepresentations. The theory focuses on misrepresentations that *induce* consumers to make purchases that they otherwise would not have made—with the injury being the money spent on those purchases.

This injury should not be controversial. As one court aptly put: "Injury and causation are established if the plaintiff loses money because of unlawful conduct." *Robinson v. Avis Rent A Car Sys., Inc.*, 106 Wash. App. 104, 22 P.3d 818, 823 (2001). That is exactly what happened here. Ms. Montes alleges that she would not have purchased the Leggings but for Aéropostale's misrepresentations. Compl. ¶ 97 (ER-45) ("If Ms. Montes had known the truth, she would not have purchased the Leggings at the price she paid."). Thus, Ms. Montes would still have the money she spent on the Leggings if not for Aéropostale's misrepresentations. That money is lost because of Aéropostale's unlawful conduct.

As discussed below, this injury theory is neither novel nor unusual. In fact, the Washington Court of Appeals has already recognized the purchase price theory in *Williams v. Lifestyle Lift Holdings, Inc.*, 175 Wash. App. 62, 302 P.3d 523 (2013). Additionally, the Oregon Supreme Court recently held that a plaintiff

suffers this injury from false discount advertising under Oregon's Unlawful Trade Practices Act. *See Clark v. Eddie Bauer LLC*, 371 Or. 177, 530 P.3d 880 (2023). And, this Court likewise reached a similar conclusion under California law in *Hinojos v. Kohl's Corp.*, 718 F.3d 1098 (9th Cir. 2013).

### 1. The Purchase Price Theory Is Already Recognized Under Washington Law.

The Washington Court of Appeals has already recognized the purchase price theory. *Williams v. Lifestyle Lift Holdings, Inc.*, 175 Wash. App. 62, 302 P.3d 523 (2013). In *Williams*, the plaintiff was "suing under the [CPA] for the cost of her surgery." *Id.* at 529. The plaintiff alleged that "she would not have given her money to [defendants] 'but for their advertising and marketing that claimed the surgery to be minimally invasive and not a traditional facelift.'" *Id.* at 528. The court held: "We conclude Williams has stated a prima facie claim under the Consumer Protection Act against the business entities responsible for the marketing of the Lifestyle Lift. A jury could conclude that ***their deceptive business strategy caused Williams to purchase a Lifestyle Lift***. A jury could further conclude that ***the cost of Williams' surgery was an injury to her business or property***[.]" *Id.* at 529 (emphasis added).

The holding in *Williams* is crystal clear: A plaintiff's CPA injury can take the form of money spent on something that she would not have purchased but for the defendant's deceptive advertising. Until now, federal district courts interpreting Washington law have consistently followed *Williams* in recognizing this injury, including in the context of false discount advertising. *See*, *e.g.*, *Nemykina v. Old Navy, LLC*, 461 F. Supp. 3d 1054 (W.D. Wash. 2020) (injury was the money spent on clothes that the plaintiff would not have bought but for the defendant's false discount advertising); *Water & Sanitation Health, Inc. v. Chiquita Brands Int'l, Inc.*, No. C14-10 RAJ, 2014 WL 2154381, at *2 (W.D. Wash. May 22, 2014); *Grigsby v. Valve Corporation*, No. C12-0553 JLR, 2013 WL 12310666, at *3 (W.D. Wash. Mar. 18, 2013).

As the *Nemykina* court stated frankly when faced with nearly identical allegations of false discount advertising: "Inducing a plaintiff into spending money she otherwise would not have spent, based on a misrepresentation, is clearly a cognizable injury" under the CPA. 461 F. Supp. 3d at 1061. This is the exact injury theory in *Williams*: "The issue under the [CPA] is whether deceptive marketing caused Williams to purchase a surgical procedure that she otherwise would have avoided." 302 P.3d at 529.

Suffice it to say, Washington law recognizes the purchase price theory. *See Williams*, 302 P.3d at 529. And, "where there is no convincing evidence that the state supreme court would decide differently, a federal court is obligated to follow the decisions of the state's intermediate appellate courts." *Ryman v. Sears, Roebuck & Co.*, 505 F.3d 993, 995 (9th Cir. 2007). The District Court did not cite any evidence—let alone convincing evidence—that the Washington Supreme Court would disaffirm *Williams*. The court was thus obligated to follow *Williams*.

Nevertheless, the District Court refused to follow *Williams* because it erroneously believed that a CPA injury can only occur from false discount advertising where the item or service was worth less than the falsely advertised "discounted" price. The District Court's rationale for its holding was that "Washington cases that find injury in false advertising are for goods and services that were different and/or worth less than what was advertised" (citing *Williams*), and that Ms. Montes did not allege that the Leggings were not worth the falsely "discounted" price she paid. Order 5–6 (ER-8–9). Notably, the District Court did not quote any language from *Williams* or even provide a pin cite to where this proposition can be found. This is because nothing in *Williams* supports the District Court's ruling.

By stating that only certain kinds of false advertising can cause injury, the District Court impermissibly turned the facts in *Williams* into factors that must be established. *See Panag*, 204 P.3d at 893 (admonishing this approach). But nothing in the CPA says that injuries can only result from certain kinds of false advertising. And there is nothing about the purchase price theory that limits the injury to only certain kinds of false advertising. As discussed below, the District Court made **the exact same mistake** that the Oregon Supreme Court recently corrected in *Clark v. Eddie Bauer LLC*, 371 Or. 177, 530 P.3d 880 (2023).

### 2. The Oregon Supreme Court Recently Corrected The Same Mistake That The District Court Made Here.

One week after the District Court issued its Order, the Oregon Supreme Court issued a decision holding that a plaintiff suffers the purchase price injury from false discount advertising under Oregon's Unlawful Trade Practices Act (UTPA). *See Clark v. Eddie Bauer LLC*, 371 Or. 177, 530 P.3d 880 (2023).

The plaintiff in *Clark* made nearly identical allegations of false discount advertising and alleged that "she would not have made any of the three purchases if she had known that the goods were not, in fact, being sold at a discount." *Id.* at 883. "That is, plaintiff alleged that she had been fraudulently induced to buy those garments by defendants' false representation that she was buying them at a bargain price." *Id.* Based on these allegations, the Oregon Supreme Court held that the

plaintiff had suffered an "ascertainable loss of money or property"[2] in purchasing products that she would not have otherwise bought. *Id.* at 893. "[W]hen a person acts in response to the deception by spending money that the person would not otherwise have spent, ***the person has been injured to the extent of the purchase price as a result of that deception***." *Id.* (emphasis added).

The court's conclusion is common sense. If the person would still have their money absent the deception, then that loss of money is an injury. In reaching this holding, the court corrected the same mistake that the District Court made here—that this injury can only be caused by certain kinds of false advertising. *See id.* at 884 (district court dismissed the plaintiff's claim because she "did not allege that defendants had made false representations about the character or quality of the garments that plaintiff bought"). The Oregon Supreme Court explained that nothing in the UTPA limits injuries to only certain misrepresentations; on the contrary, a consumer may pursue a UTPA claim if she "can prove an ascertainable loss resulting from ***any*** unfair trade practice." *Id.* at 887 (emphasis added). "Thus, the proper focus here is whether the complaint alleges an ascertainable loss, and not on whether it alleges a particular form of misrepresentation." *Id.*

---

[2]     An "ascertainable loss of money or property" is the language used to describe the injury requirement in the UTPA. Oregon. Rev. Stats. § 646.638(1).

This is precisely what the District Court did here when it focused on the alleged misrepresentations rather than the injury.

**Under the purchase price theory, the injury is the same regardless of the type of misrepresentation**. Thus, the type of misrepresentation does not matter; all that matters is that the misrepresentation was an *inducement* to the plaintiff's purchase. "At its essence, the purchase price theory is that one person has been induced by another person's unlawful activities to pay money for something that the first person would not otherwise have bought." *Id.* at 891. A consumer loses the exact same money by buying something that she would not have bought regardless of what misrepresentation induced her to make the purchase.

**The Oregon Supreme Court also rejected the notion that the injury element required "proof that a person received something of lesser 'value' than the person paid."** *Id*. at 891. "Nothing in the UTPA ties the notion of 'ascertainable loss'" to such a requirement. *Id.* "[I]t should not matter that a person unlawfully led to believe that she was buying one thing ultimately received another thing of equal or even greater value." *Id.* The CPA likewise does not have such a requirement. Yet, the District Court erroneously believed this to be true as well.

Ultimately, the Oregon Supreme Court addressed and rejected every argument that the defendant made against the purchase price theory. These were all the same arguments that Aéropostale made below and will likely make on appeal.

### 3. This Court Has Previously Corrected The Same Mistake That The District Court Made Here.

In addition to the Oregon Supreme Court, this Court has also corrected a district court's erroneous belief that only certain misrepresentations can cause injury. *See Hinojos v. Kohl's Corp.*, 718 F.3d 1098 (9th Cir. 2013) (California law). In *Hinojos*, the plaintiff made nearly identical allegations of false discount advertising and alleged that "he would not have purchased the goods in question absent this misrepresentation." *Id.* at 1105.

Like here, the California district court had dismissed the plaintiff's claims on the grounds that injuries from false advertising were limited to only certain misrepresentations, specifically ones about "composition, effects, origin, and substance of advertised products." *Id.* at 1106. This Court reversed the district court and held that the plaintiff had "lost money or property"[3] in purchasing products that he otherwise would not have bought but for the false discount

---

[3] "Lost money or property" is the language used to describe the injury requirement in California's False Advertising Law, Cal. Bus. & Prof. Code § 17535, and Unfair Competition Law, Cal. Bus. & Prof. Code § 17204.

advertising. *See id*. at 1105–07. This Court found nothing in California's consumer protection statutes that supported the trial court's arbitrary limitation on what misrepresentations caused injury. On the contrary, such a limitation would "eliminate consumers' ability to bring . . . claims for a vast array of other misleading marketing practices that have little or nothing to do with a product's 'composition, effects, origin, and substance.'" *Id.* at 1106. If the injury element "were interpreted to require more than that a consumer have purchased a product that he would not have purchased absent the misleading advertisement, then it 'would bring to an end private consumer enforcement of bans on many label misrepresentations[.]'" *Id.* at 1107 (quoting *Kwikset Corp. v. Superior Court (Benson)*, 51 Cal. 4th 310, 246 P.3d 877, 891 (2011)).

Beyond these policy reasons, the Court also opined that a consumer incurs a "***more obvious economic injury***" from false discounts than false labeling "because the bargain hunter's expectations about the product he just purchased is *precisely* that it has a higher perceived value and therefore has a higher resale value." *Id.* at 1106. The Court explained that, to many consumers, "a product's 'regular' or 'original' price matters [because] it provides important information about the product's worth." *Id.* at 1105–06. "By creating an impression of savings, the presence of a higher reference price enhances subjects' perceived value and

willingness to buy the product." *Id.* at 1106. "That, of course, is *why* retailers like Kohl's have an incentive to advertise false 'sales.' It is also why the California legislature has prohibited them from doing so." *Id.*

The California Court of Appeal later endorsed *Hinojos* as a correct interpretation of California law. *See Hansen v. Newegg.com, Americas, Inc.*, 25 Cal. App. 5th 714, 236 Cal. Rptr. 3d 61, 72 (2018) ("We agree with the Ninth Circuit's conclusion that under *Kwikset*, the UCL and FAL's standing requirements are satisfied when a consumer has alleged that he or she relied on fictitious former price information in making a purchase, and would not have made the purchase but for the misrepresentation.").

### 4. The Washington Supreme Court Would Affirm *Williams* And Follow The Oregon Supreme Court In Recognizing The Purchase Price Theory.

*Williams* recognized the purchase price theory. And, as explained above, the District Court's distinction regarding false discount misrepresentations is incorrect. The District Court was therefore obligated to follow *Williams* absent **convincing evidence** that the Washington Supreme Court would have decided the issue differently. *Ryman*, 505 F.3d at 995. No such evidence was presented. Thus, the court erred in not following *Williams*. *Id.*

The same standard applies on appeal.[4] Aéropostale must present convincing evidence that the Washington Supreme Court would disaffirm *Williams*. Aéropostale did not meet this burden below, and it cannot do so here. On the contrary, all evidence suggests that the Washington Supreme Court would affirm *Williams* and recognize the purchase price theory. In all likelihood, the Washington Supreme Court would follow the *Clark* decision since both supreme courts interpret their respective consumer protection statutes in materially the same way. As discussed below, when the Oregon Supreme Court recognized the purchase price theory it echoed many of the same sentiments that the Washington Supreme Court has expressed when discussing the CPA, its private right of action, and its injury requirement.

Both the Washington Supreme Court and the Oregon Supreme Court have stated that their respective statutes must be liberally construed in order to protect the public. *See Scott*, 161 P.3d at 1005–06; *Clark*, 530 P.3d at 886. A private right of action was added to each statute to encourage private enforcement so that consumers could protect themselves and the public from deceptive practices. *See Dix*, 161 P.3d at 1021–22; *Clark*, 530 P.3d at 885. ***The Washington Supreme***

---

[4]     Alternatively, if this Court deems it appropriate, it has the option to certify the question to the Washington Supreme Court; Ms. Montes has already filed a motion for certification. *See* Dkt. No. 4.

**Court has gone even further** by emphasizing that private citizens are "private attorneys general" who play an "integral part of CPA enforcement." *Scott*, 161 P.3d at 1006. This has led the court to "construe the CPA liberally in favor of plaintiffs." *Indoor Billboard*, 170 P.3d at 24. Thus, if an Oregon consumer has a private right of action against false discount advertising, a Washington consumer surely does as well.

Additionally, both courts have interpreted their respective statute's injury requirement in materially the same way: Both require a broad view of what constitutes an injury, with only personal injuries having been excluded. *See Frias*, 334 P.3d at 538; *Clark*, 530 P.3d at 886, 889–90. Even the most minimal injury is sufficient, and quantifiable monetary loss is not required. *See Frias*, 334 P.3d at 538; *Clark*, 530 P.3d at 886.

And, perhaps most significantly, both courts have rejected interpretations of their respective statutes that would effectively preclude consumers from bringing a claim against a deceptive practice. *See Thornell*, 363 P.3d at 591–92 (detailing a half-dozen cases where the CPA was broadly interpreted for this purpose, and then doing the same because "unscrupulous entities might escape liability under the CPA" otherwise); *Panag*, 204 P.3d at 893; *Dix*, 161 P.3d at 1023–24; *Clark*, 530 P.3d at 891.

In *Panag*, the majority emphatically rejected the dissent's interpretation of the CPA because it "would impose an insurmountable obstacle to suit by persons in plaintiffs' positions," which "would defeat the goals of the CPA and fly in the face of the dissent's own implicit agreement that the collection practices here constitute deceptive practices." 204 P.3d at 893. "The end result would be a great disservice to the goals of the CPA." *Id.*

The Oregon Supreme Court articulated this same rationale in rejecting the defendants' arguments in *Clark*. The court explained that finding no injury under the plaintiff's circumstances would suggest that "the legislature, despite rendering this very practice unlawful and authorizing private citizens to enforce the UTPA, intended for a person in plaintiff's shoes to be left without recourse under the UTPA." *Clark*, 530 P.3d at 891. The court found this view untenable because it would be "inconsistent with the objectives of the UTPA, which are themselves indicated by the legislature's empowerment of private citizens to enforce its provisions—including the ones at issue in this case." *Id.*

The *Clark* decision is directly analogous because the Oregon Supreme Court recognized an injury from false discount advertising after interpreting the UTPA in materially the same way that the Washington Supreme Court interprets the CPA.

These parallels between Washington and Oregon law concerning false advertising likewise exist between Washington and California law. *See McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 393 P.3d 85, 89 (2017) (explaining that California's consumer protection laws must be liberally construed "to protect consumers against unfair and deceptive business practices"); *Kwikset Corp. v. Superior Court (Benson)*, 51 Cal. 4th 310, 246 P.3d 877, 891 (2011) (recognizing "the significant role [that] private consumer enforcement plays" and interpreting the injury requirement as broad as necessary to ensure that role can be played; also, refusing to interpret California's consumer protection statutes in a way that precludes private enforcement of clearly deceptive conduct because not doing so "would impair the ability of consumers to rely on labels, place those businesses that do not engage in misrepresentations at a competitive disadvantage, and encourage the marketplace to dispense with accuracy in favor of deceit").

To be clear, Aéropostale is not quibbling over *which* injury theory should move forward. Aéropostale takes the position that *no* injury can be alleged to maintain a CPA claim against its deceptive practices. Aéropostale is attempting to turn the injury element into the CPA's Achilles heel by having the Court "impose an insurmountable obstacle to suit" by persons in Ms. Montes's position. 204 P.3d at 893. "The end result would be a great disservice to the goals of the CPA." *Id.*

### C. Ms. Montes's Benefit Of The Bargain Theory Is A Form Of Injury Under The CPA.

Ms. Montes's second injury theory is the loss of the value of the bargain that was represented to her by Aéropostale but that she did not actually receive, i.e., the benefit of the bargain theory. The measure of the loss under this theory is "the difference between the value had the misrepresentation been true and the actual value." *Salter v. Heiser*, 39 Wash. 2d 826, 239 P.2d 327, 331 (1951).

### 1. The Lost Benefit Of The Bargain Is Already Recognized As A CPA Injury Under Washington Law.

Washington courts have long recognized the "benefit of the bargain" rule as a measurement of damages for fraud. *See McInnis & Co. v. W. Tractor & Equip. Co.*, 63 Wash. 2d 652, 388 P.2d 562, 566 (1964) ("The measure of damages in fraud cases is to be computed by the 'benefit of bargain' rule[.]"). The benefit of the bargain rule is a generally applicable rule that may be used whenever a plaintiff seeks damages caused by a misrepresentation. *See Turner v. Enders*, 15 Wash. App. 875, 552 P.2d 694, 697 (1976) ("When the plaintiff seeks to recover general damages caused by misrepresentation, the measure of damages is the 'benefit of the bargain.'").

More recently, the Washington Supreme Court has recognized the lost benefit of the bargain as a CPA injury when it is caused by deceptive practices. *See Mason v. Mortgage America, Inc.*, 114 Wash. 2d 842, 792 P.2d 142, 149 (1990) ("The actual damages awarded by the trial court [i.e., the benefit of the bargain damages] were caused by the unfair and deceptive acts and practices of the defendants and hence are subject to the treble damage provision of the [CPA].").

The lost benefit of the bargain fits comfortably within the broad view of injury to "business or property." *See Frias*, 334 P.3d at 538 (explaining that "injuries compensable under the CPA are relatively expansive," and only exclude personal injuries). Moreover, in instances of fraud or misrepresentation, such as this, courts prefer to award "benefit of the bargain" damages (the difference between the value had the misrepresentation been true and the actual value) as opposed to "out-of-pocket" damages (the difference between the amount paid and the actual value) because the benefit of the bargain rule is "advantageous to the plaintiff." *Salter v. Heiser*, 39 Wash. 2d 826, 239 P.2d 327, 331 (1951) (citing *Selman v. Shirley*, 161 Or. 582, 85 P.2d 384 (1938)F).

The benefit of the bargain rule is advantageous to the plaintiff because it is not based on the amount she paid for the goods. Thus, the plaintiff may recover damages even if she got exactly what she paid for in terms of market value.

Conversely, "the out-of-pocket-damage rule is more favorable to fraudulent parties than the rule which gives the defrauded party the benefit of his bargain." *Selman*, 85 P.2d at 389. This is because, under the out-of-pocket damage rule, there are many cases where "a fraudulent person can in no event lose anything by his fraud. He runs the chance of making a profit if he successfully carries out his plan and is not afterward brought to account for it; and if he is brought to account, he at least will lose nothing by his misconduct." *Id.* at 392 (quoting WILLISTON ON CONTRACTS (Rev. Ed. 1936) §1392).

**This is essentially Aéropostale's argument—that even if it engaged in false advertising, it should lose nothing by its misconduct.** Indeed, one of the primary types of misconduct that is committed with impunity under the out-of-pocket damage rule are misrepresentations about value, i.e., the kind of misrepresentations Aéropostale made to Ms. Montes. *See id.* at 393 (explaining that courts most often apply the benefit of the bargain rule when the misrepresentation is about "value, quality or condition").

### 2. Ms. Montes Has Sufficiently Alleged The Benefit Of The Bargain Theory.

Ms. Montes alleges that she did not receive the benefit of the bargain that Aéropostale promised her. Ms. Montes purchased Leggings from Aéropostale's website that were advertised with a strike-through list price of "~~$12.50~~" and a "sale" price of $6.00. Compl. ¶ 87 (ER-43). Ms. Montes alleges that Aéropostale represented to her that the *value* of its Leggings was $12.50. Compl. ¶¶ 87–88 (ER-43). Ms. Montes also alleges that Aéropostale represented that the Leggings were on sale for $6.00—or a purported discount of 52% off their regular price. *Id.* Thus, the benefits of the bargain that Aéropostale promised to Ms. Montes was that she was getting a pair of leggings worth $12.50, and that she was getting a 52% discount off the regular selling price of the leggings by only paying $6.00 for them.

However, Ms. Montes alleges that Aéropostale had virtually *never* offered the Leggings at their $12.50 list price but, rather, had nearly always offered them for between $5.00 (i.e., 17% less than what Ms. Montes paid) and $6.00 (the same price that Ms. Montes paid). Compl. ¶¶ 90–91 (ER-44). Because the Leggings were perpetually discounted, the true "regular" price of the Leggings was an amount *less* than the $12.50 value represented by Aéropostale. Compl. ¶ 94 (ER-45) Therefore, Ms. Montes necessarily received something less than the benefit of the bargain promised to her, i.e., a pair of leggings worth $12.50 at a discount of

52% off their regular selling price. *See id*. That "something less" is her injury under the CPA—the exact amount does not need to be shown. *See Frias*, 334 P.3d at 538 ("Because the CPA addresses 'injuries' rather than 'damages,' quantifiable monetary loss is not required.").

These allegations are sufficient to establish a CPA injury. "An injury cognizable under the [CPA] will sustain an award of attorneys' fees" and injunctive relief. *Mason*, 792 P.2d at 148–49. The injury element is not intended to act as a bar to recovery; it is only intended to ensure that the plaintiff is actually a victim of consumer fraud. Whether damages will ultimately be awarded in any given case is dependent on the evidence presented to support those damages.

In order to obtain damages, "the fact of loss must be established with sufficient certainty to provide a reasonable basis for estimating that loss." *Mason*, 792 P.2d at 146. "Mathematical exactness is not required," however. *Id.* Ultimately, each side will present evidence to the jury on what Aéropostale represented the value of the Leggings to be and on what they believe the actual value of the Leggings were. Then, the "trier of fact has discretion to award damages which are within the range of relevant evidence." *Id.*

Meanwhile, Ms. Montes does not need to present evidence to support an award of damages in order to survive a motion to dismiss. Ms. Montes only needs to plead plausible allegations that she suffered an injury under the CPA, which she has done.[5]

### D. Ms. Montes's Price Premium Theory Is A Form Of Injury Under The CPA.

Ms. Montes's third injury theory is the price premium theory. Ms. Montes alleges that Aéropostale's false discount advertising artificially inflates consumer demand, thereby shifting the demand curve and enabling Aéropostale to charge *everyone*—including Ms. Montes—a higher price for its products than it otherwise could have. Compl. ¶¶ 81, 114 (ER-42, 49). The injury under this theory is the consumer's "out-of-pocket" damages, i.e., the difference between the lower price the retailer would have had to charge to sell the goods had they been truthfully advertised and the higher amount the deceived consumer actually paid.

---

[5] The District Court completely ignored Ms. Montes's benefit of the bargain theory even though it was alleged in the Complaint and briefed in her Opposition; instead, the court only addressed Ms. Montes's other two injury theories. *See* Order 6:12-15 (ER-9) ("In essence, Plaintiff alleges two theories of injury: that she was misled into purchasing something of value and that she incurred a price premium injury, i.e. charging a higher price for products than it otherwise could have."). But, since the Order is reviewed *de novo*, the District Court's failure to address this injury theory has no impact on this Court's analysis.

### 1. The Price Premium Theory Is Well-Established In Both The Economics And Legal Community.

The price premium theory uses expert and statistical evidence to show what should be obvious: Retailers engage in false discount advertising because ***it works***. False discount advertising artificially increases demand and the prices that retailers can charge. Forty years of research on consumer behavior confirms this. *See* Compl. ¶ 26 n.3 (ER-22) (non-exhaustive list of academic research done on false discount advertising and its effects on consumer behavior). To determine damages under the price premium theory, expert and statistical evidence is utilized to show that the price premium was charged and that it was a result of the defendant's misrepresentations. Statistical evidence and expert analysis is also used to calculate the *amount* of the price premium.

To date, no Washington state court has considered the price premium theory. However, numerous federal courts within the Circuit—including district courts in Washington and this Court—have recognized that paying a price premium is a cognizable injury which can be both proven and calculated using expert and statistical evidence. *See*, *e.g.*, *Rydman v. Champion Petfoods USA, Inc.*, No. C18-1578 TSZ, 2023 WL 3172466, at *4 (W.D. Wash. May 1, 2023) ("A price

premium theory based on a conjoint analysis[6] is an acceptable method for computing damages."). In fact, this Court previously affirmed certification of 11 state classes based on the plaintiffs' use of "two well-established damages models" to "measure the classwide price premium attributable to their theory of liability." *Briseno v. ConAgra Foods, Inc.*, 674 Fed. App'x 654, 657 (9th Cir. 2017).

*Briseno* is just one of numerous examples of false advertising cases where the court certified a class based on evidence showing that it is possible to: (1) prove the existence of a price premium resulting from the defendant's misrepresentations; and (2) measure that price premium to calculate damages. *See, e.g.*, *Prescott v. Reckitt Benckiser LLC*, 20-CV-02101-BLF, 2022 WL 3018145, at *10 (N.D. Cal. July 29, 2022) (holding that "the price premium is an appropriate measure of recovery for product mislabeling" and certifying three state classes under the consumer protection laws of California, Massachusetts, and New York); *Hilsley v. Ocean Spray Cranberries, Inc.*, No. 17CV2335-GPC(MDD), 2019 WL 3006465, at *3 (S.D. Cal. July 10, 2019) (refusing to decertify class and explaining

---

[6]     "Conjoint analysis" is a form of statistical analysis that is used to "quantify the value of particular characteristics and features of a product to the consumer." *Rydman*, 2023 WL 3172466, at *2; *see also In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 1026 (C.D. Cal. 2015) ("Marketers and marketing researchers have used conjoint analysis since the early 1970's to determine the values consumers ascribe to specific attributes of multi-attribute products and to understand the features driving product preferences.").

that "[d]istrict courts have held that contingent valuation analysis is a reliable survey based methodology to determine price premium damages"); *Broomfield v. Craft Brew All., Inc.*, 17-CV-01027-BLF, 2018 WL 4952519, at *16 (N.D Cal. Sept. 25, 2018) (certifying class based on price premium damages model and stating that "[t]his holding is perfectly consistent with the numerous district court opinions certifying classes . . . based on price premium damages models"); *Schneider v. Chipotle Mexican Grill, Inc.*, 328 F.R.D 520, 541 (N.D. Cal. 2018) (denying defendant's motion for summary judgment and certifying class based on price premium damages model); *Fitzhenry-Russell v. Dr. Pepper Snapple Group, Inc.*, 326 F.R.D. 592, 615 (N.D. Cal. 2018) (certifying class and holding that the plaintiffs' "price premium survey is able to calculate damages on a class-wide basis" because it measures how much the misrepresentation is worth); *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 413–15 (S.D.N.Y. 2015) (certifying class and holding that the plaintiffs' three alternative methods of proving and calculating the price premium were all appropriate—"hedonic regression, a contingent valuation study, or a conjoint analysis"); *McCrary v. Elations Co. LLC*, EDCV 13-0242 JGB (SPx), 2014 WL 12589137, at *9 (C.D. Cal. Dec. 2, 2014) (accepting plaintiff's two price premium models and refusing to decertify class action).

*In fact, Ms. Montes's own counsel has previously used such expert evidence to successfully certify a class under the price premium theory in another false discount advertising case.* See *Brazil v. Dell Inc.*, No. C-07-01700RMW, 2010 WL 5387831 (N.D. Cal. Dec. 21, 2010).

As the above cases demonstrate, this is a viable injury theory to certify a class action (and even survive a motion for summary judgment). Class certification and summary judgment are both far more rigorous hurdles to overcome than a motion to dismiss. And, again, Ms. Montes's counsel has already previously certified a class under the price premium theory *in another false discount advertising case* in the Ninth Circuit. This fact alone should be more than sufficient for Ms. Montes to move past the *pleading* stage and be given the chance to present similar evidence here. *See Hinojos*, 718 F.3d at 1104 n.4 ("At the pleading stage, of course, allegations of economic injury suffice.").

## 2. Ms. Montes Has Sufficiently Alleged The Price Premium Theory.

The District Court did not directly address the viability of the price premium theory. Rather, the court appeared to believe that Ms. Montes had not adequately alleged the injury. The court stated that Ms. Montes "does not allege that the leggings were not worth the price she paid." Order 6 (ER-9). This is because the court decided *on its own* that the "actual value" of the Leggings was the $6.00

price that Ms. Montes paid for them. *See* Order 6 (ER-9) ("Plaintiff concedes she paid $6.00, the actual value of the leggings."). There are several problems with the court's assertion.

First, Ms. Montes never alleges in her Complaint what the actual value of the Leggings was. All Ms. Montes alleges is that, in the six months leading up to her purchase, for all but one day, "Aéropostale's offering price [for the Leggings] ranged from $5.00 (i.e., 17% *less* than what Ms. Montes paid) to $6.00 (the same price that Ms. Montes paid)." Compl. ¶ 91 (ER-44). This $5.00 to $6.00 price range was intended to show that Ms. Montes suffered the lost benefit of the bargain because the Leggings were worth substantially less than the $12.50 that Aéropostale represented them to be worth. *See* Compl. ¶ 94 (ER-45).

This leads to the second, and more important issue with the court's assertion: The Leggings' regular selling prices were ***with*** the false advertising. But, the price premium theory dictates that Aéropostale's false advertising artificially inflated the prices it could charge Ms. Montes and every other customer. Put differently, **Aéropostale would have had to sell the Leggings at a *lower price* in order to sell the same amount of the Leggings *without* falsely advertising that they were "discounted."**

Here, the highest regular selling price for the Leggings *with* the false advertising was $6.00, the price Ms. Montes paid. If Ms. Montes can prove her price premium theory, then the evidence will necessarily show that the highest regular selling price that Aéropostale could have sold the Leggings for *without* the false discount advertising was less than the $6.00 price that Ms. Montes paid. Ms. Montes cannot yet allege what that precise honest selling price would have been because expert evidence is required to show that. Nevertheless, she has sufficiently alleged that she paid a price premium because the price she paid was **more** than what Aéropostale could have sold the Leggings for without the false discount advertising. This is all Ms. Montes must allege in order to survive a motion to dismiss.[7]

---

[7]    Because the District Court could not cite her Complaint, it instead cited her Opposition to the Motion to Dismiss for its assertion that the actual value of the Leggings was $6.00. *See* Order 6 (ER-9). There are several problems with this.

First, Ms. Montes never stated in her Opposition that the Leggings had an actual value of $6.00. Instead, she estimated that the Leggings "had an actual value of between $5.00 and $6.00—the price range Aéropostale regularly offered them for sale." Oppo. 21 (ER-13). She further emphasized that this estimate was conservative, and not a definitive statement. Oppo. 26 (ER-14) (Ms. Montes bargained and paid for $12.50 Leggings but actually received (**at best**) $5.00–$6.00 Leggings") (emphasis added). This price range was intended to show that she did not receive the benefit of the bargain, which was the context she was saying this in. But because these regular selling prices were *with* the false advertising, they necessarily could not reflect the Leggings' actual value *without* the false discount advertising—which is the crux of the price premium theory. (Ms. Montes would

## II. THE DISTRICT COURT ERRED BY DISMISSING THE COMPLAINT WITH PREJUDICE AND FAILING TO GRANT MS. MONTES LEAVE TO FILE A FIRST AMENDED COMPLAINT.

The District Court erred when it dismissed the entire Complaint with prejudice and without leave to amend—failing to provide Ms. Montes with even one opportunity to amend her allegations. Order 8 (ER-11); Judgment (ER-3).

The "longstanding rule" of the Ninth Circuit is that "leave to amend should be granted if it appears at all possible that the plaintiff can correct the defect." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (internal punctuation omitted). "It is black-letter law that a district court must give plaintiffs at least one chance to amend a deficient complaint, absent a clear showing that amendment would be futile." *Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1041 (9th Cir. 2015).

---

have fleshed this out more if Aéropostale had actually disputed her price premium injury in its moving papers. But because the injury was undisputed, Ms. Montes merely noted that she could at least move forward under this injury theory and did not focus on the distinctions between the two theories.)

Second, the District Court should never have rested its decision on a statement made outside of the Complaint to begin with. Factual statements made in legal briefs are "treated as matters outside the pleading for purposes of Rule 12(b)," and cannot be considered "without converting the motion to one for summary judgment." *Friedl v. City of New York*, 210 F.3d 79, 83–84 (2d Cir. 2000); *see also United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003).

Ultimately, the District Court's Order is reviewed *de novo*, so the District Court's error has no bearing on this Court's obligation to determine whether Ms. Montes's Complaint sufficiently alleges an injury under the CPA.

It must be "clear beyond doubt" that amendment would be futile. *Center for Biological Diversity v. Veneman*, 394 F.3d 1108, 1114 (9th Cir. 2005).

The ability to amend at least once is so important that a party is entitled to amend even if that party failed to request leave to amend. "[I]n a line of cases stretching back nearly 50 years, we have held that in dismissing for failure to state a claim under Rule 12(b)(6), a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez*, 203 F.3d at 1127. Here, Ms. Montes specifically requested leave to amend if the District Court had any issues with the sufficiency of the allegations, but that request was ignored. *See* Oppo. 26 (ER-14).

As discussed above, Ms. Montes contends that the District Court erred as a matter of law regarding whether she sufficiently alleged an injury under the CPA. If this Court agrees with Ms. Montes, then her Complaint is sufficient, and this Court should reverse, remand, and instruct the District Court to order Aéropostale to file an Answer. However, if this Court disagrees with Ms. Montes and finds her Complaint to be insufficient, this Court should still reverse and remand, albeit with instructions to the District Court to grant Ms. Montes leave to amend.

The factors which govern leave to amend militate in favor of Ms. Montes receiving leave. *See Foman v. Davis*, 371 U.S. 178, 182 (1962). Aéropostale would not be prejudiced*. Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (reversing dismissal with prejudice). There is no indication in the record of undue delay, bad faith, a dilatory motive, or repeated failures to cure deficiencies on Ms. Montes's part. *Foman*, 371 U.S. at 182. Similar to the situation in *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1034–35 (9th Cir. 2008) (reversing trial court's dismissal with prejudice and denial of leave to amend), Ms. Montes's case had been in federal court for only a few months at the time of the dismissal, trial was not approaching, the District Court did not explain at a hearing or otherwise that it intended to dismiss the Complaint with prejudice, and the District Court did not allow Ms. Montes a chance to explain how she would amend the Complaint if allowed to do so in response to the District Court's ruling. This Court should follow *Manzarek* and reverse the District Court's ruling.

Due to the posture of this case, Ms. Montes is generally handicapped in proffering to this Court examples of how she would amend her Complaint if granted leave. Ms. Montes contends in the first instance that her Complaint sufficiently alleges an injury under the CPA; if this Court agrees, Ms. Montes does not need to file an amended complaint. But, until this Court rules on the exact

contours of what Ms. Montes must allege to maintain her claims, Ms. Montes

cannot know which facts are relevant to the District Court to proffer for an

amendment.

That said, the District Court appeared to misunderstand the price premium

theory. The court believed that Ms. Montes did not allege paying a price premium

for the Leggings even though she paid the highest regular selling price, which she

alleges was artificially inflated as a direct result of the false discount advertising.

As explained above, if she proves these allegations to be true, then she necessarily

paid a price premium. Thus, Ms. Montes proffers that, if granted leave, she can

allege facts further fleshing out the price premium theory, including why she

logically suffered this injury, how the loss would be calculated, and what research

(and defendant business records) would establish the loss.

## III.    IF THE COURT DEEMS IT APPROPRIATE, IT SHOULD CERTIFY THE QUESTION TO THE WASHINGTON SUPREME COURT.

Before any briefs had been filed, Ms. Montes filed a Motion for Order

Certifying Questions of Law to the Washington Supreme Court. *See* Dkt. No. 4.

She did this in part because ***the Court previously certified the same question***

***under Oregon law to the Oregon Supreme Court.*** *See Clark v. Eddie Bauer LLC*,

30 F.4th 1151 (9th Cir. 2022). *Clark* involved the same attorneys on both sides; the

same three injury theories being alleged; the same arguments made by both sides;

53

and even the same rationale and holding by the district court. *See id.* at 1152, 1155–57. As detailed above, the Oregon Supreme Court issued its decision holding that a plaintiff suffers the purchase price injury from false discount advertising under the UTPA. *See Clark*, 530 P.3d at 893. Ms. Montes contends that the Washington Supreme Court would rule similarly—and likely identically.

The state law issue in this case carries significant policy implications. Aéropostale asks the Court to take the unprecedented step of stripping Washington consumers of their ability to bring CPA claims against entire categories of deceptive practices. If a court is going to narrow the CPA's reach on deceptive practices in direct contravention of the CPA's purpose, then the court doing so should be the Washington Supreme Court. Thus, the Court should certify the question to the Washington Supreme Court if it has any doubts about the issue.

## CONCLUSION

For the reasons stated, Plaintiff Shawnna Montes respectfully requests that the Court reverse the Judgment and Order entered in this civil action and remand the civil action to the U.S. District Court for the Eastern District of Washington with instructions that the District Court either order Aéropostale to file an Answer or grant Ms. Montes leave to amend. Alternatively, Ms. Montes respectfully requests that the Court certify the relevant questions of law to the Washington

Supreme Court. *See* Motion for Order Certifying Questions of Law to the

Washington Supreme Court (Dkt. No. 4).


Dated:  December 29, 2023          HATTIS & LUKACS

                                   By: _Che Corrington_
                                        Che Corrington
                                   Daniel M. Hattis
                                   Paul Karl Lukacs
                                   11711 SE 8th St., Suite 120
                                   Bellevue, WA 98005
                                   Telephone:  (425) 233-8650

                                   *Attorneys for Plaintiff-Appellant*
                                   *Shawnna Montes*

## STATEMENT OF RELATED CASES

Plaintiff is not aware of any related cases pending in this Court.

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

**9th Cir. Case Number:** 23-35496 _____

I am the attorney or self-represented party.

**This brief contains 12,308 words,** including 0 words manually counted in any visual images, and excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[**X**] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties;
    [ ] a party or parties are filing a single brief in response to multiple briefs; or
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).


**Signature** *s/ Che Corrington* _____     **Date** December 29, 2023 _____

# ADDENDUM

West's Revised Code of Washington Annotated
  Title 19. Business Regulations--Miscellaneous (Refs & Annos)
    Chapter 19.86. Unfair Business Practices--Consumer Protection (Refs & Annos)

West's RCWA 19.86.020

19.86.020. Unfair competition, practices, declared unlawful

Currentness

Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.

**Credits**
[1961 c 216 § 2.]

Notes of Decisions (998)

West's RCWA 19.86.020, WA ST 19.86.020
Current with all legislation from the 2023 Regular and First Special Sessions of the Washington Legislature.

**End of Document**                              © 2023 Thomson Reuters. No claim to original U.S. Government Works.

West's Revised Code of Washington Annotated
Title 19. Business Regulations--Miscellaneous (Refs & Annos)
Chapter 19.86. Unfair Business Practices--Consumer Protection (Refs & Annos)

West's RCWA 19.86.090

19.86.090. Civil action for damages--Treble damages authorized--Action by governmental entities

Effective: July 26, 2009
Currentness

Any person who is injured in his or her business or property by a violation of RCW 19.86.020, 19.86.030, 19.86.040, 19.86.050, or 19.86.060, or any person so injured because he or she refuses to accede to a proposal for an arrangement which, if consummated, would be in violation of RCW 19.86.030, 19.86.040, 19.86.050, or 19.86.060, may bring a civil action in superior court to enjoin further violations, to recover the actual damages sustained by him or her, or both, together with the costs of the suit, including a reasonable attorney's fee. In addition, the court may, in its discretion, increase the award of damages up to an amount not to exceed three times the actual damages sustained: PROVIDED, That such increased damage award for violation of RCW 19.86.020 may not exceed twenty-five thousand dollars: PROVIDED FURTHER, That such person may bring a civil action in the district court to recover his or her actual damages, except for damages which exceed the amount specified in RCW 3.66.020, and the costs of the suit, including reasonable attorney's fees. The district court may, in its discretion, increase the award of damages to an amount not more than three times the actual damages sustained, but such increased damage award shall not exceed twenty-five thousand dollars. For the purpose of this section, "person" includes the counties, municipalities, and all political subdivisions of this state.

Whenever the state of Washington is injured, directly or indirectly, by reason of a violation of RCW 19.86.030, 19.86.040, 19.86.050, or 19.86.060, it may sue therefor in superior court to recover the actual damages sustained by it, whether direct or indirect, and to recover the costs of the suit including a reasonable attorney's fee.

**Credits**
[2009 c 371 § 1, eff. July 26, 2009; 2007 c 66 § 2, eff. April 17, 2007; 1987 c 202 § 187; 1983 c 288 § 3; 1970 ex.s. c 26 § 2; 1961 c 216 § 9.]

**OFFICIAL NOTES**

**Application--2009 c 371:** "This act applies to all causes of action that accrue on or after July 26, 2009." [2009 c 371 § 3.]

**Effective date--2007 c 66:** See note following RCW 19.86.080.

**Intent--1987 c 202:** See note following RCW 2.04.190.

**Short title--Purposes--1983 c 288:** "This act may be cited as the antitrust/consumer protection improvements act. Its purposes are to strengthen public and private enforcement of the unfair business practices-consumer protection act, chapter 19.86 RCW, and to repeal the unfair practices act, chapter 19.90 RCW, in order to eliminate a statute which is unnecessary in light of the provisions and remedies of chapter 19.86 RCW. In repealing chapter 19.90 RCW, it is the intent of the legislature that chapter 19.86 RCW should continue to provide appropriate remedies for predatory pricing and other pricing practices which constitute violations of federal antitrust law." [1983 c 288 § 1.]

West's Revised Code of Washington Annotated
    Title 19. Business Regulations--Miscellaneous (Refs & Annos)
        Chapter 19.86. Unfair Business Practices--Consumer Protection (Refs & Annos)

West's RCWA 19.86.920

19.86.920. Purpose--Interpretation--Liberal construction--Saving--1985 c 401; 1983 c 288; 1983 c 3; 1961 c 216

Currentness

The legislature hereby declares that the purpose of this act is to complement the body of federal law governing restraints of trade, unfair competition and unfair, deceptive, and fraudulent acts or practices in order to protect the public and foster fair and honest competition. It is the intent of the legislature that, in construing this act, the courts be guided by final decisions of the federal courts and final orders of the federal trade commission interpreting the various federal statutes dealing with the same or similar matters and that in deciding whether conduct restrains or monopolizes trade or commerce or may substantially lessen competition, determination of the relevant market or effective area of competition shall not be limited by the boundaries of the state of Washington. To this end this act shall be liberally construed that its beneficial purposes may be served.

It is, however, the intent of the legislature that this act shall not be construed to prohibit acts or practices which are reasonable in relation to the development and preservation of business or which are not injurious to the public interest, nor be construed to authorize those acts or practices which unreasonably restrain trade or are unreasonable per se.

**Credits**
[1985 c 401 § 1; 1983 c 288 § 4; 1983 c 3 § 25; 1961 c 216 § 20.]

# OFFICIAL NOTES

**Reviser's note:** "This act" originally appears in 1961 c 216.

**Short title--Purposes--1983 c 288:** See note following RCW 19.86.090.

Notes of Decisions (40)

West's RCWA 19.86.920, WA ST 19.86.920
Current with all legislation from the 2023 Regular and First Special Sessions of the Washington Legislature.

# CERTIFICATE OF SERVICE

*Shawnna Montes v. SPARC Group LLC*

**Ninth Circuit Case No. 23-35496**

I hereby certify that I electronically filed the foregoing/attached document, titled **Plaintiff and Appellant Shawnna Montes's Opening Brief**, on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

By doing so, an electronic copy was served on:

Stephanie Sheridan, Esq.
Meegan Brooks, Esq.
BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP

David R. Ebel, Esq.
Molly J. Henry, Esq.
SCHWABE, WILLIAMSON & WYATT, P.C.

*Counsel for Defendant and Appellee*
*SPARC Group LLC*


Signature: _/s/ Che Corrington_      Date: December 29, 2023